THOMAS RANDALL vs. JAMES T. ARCHER.

1. An attorney or solicitor who conducts a suit, has a *lien* for his fees upon the fund recovered, as long as it remains within the custody or control of the Court.

2. Where a solicitor had been employed, under a special agreement, to conduct a suit, and during the progress and pendency of the suit, the owner of the demand assigned his interest in the same to a third party, no stipulation entered into between the assignor and assignee, in regard to the amount of fees to be allowed the solicitor, will be permitted to affect his rights which had accrued in virtue of the special agreement.

3. Where a client employs an attorney, for a stipulated fee, to institute and conduct a suit, and during the progress of the same he employs additional counsel, this gives the client no *right* to insist upon a reduction of the amount of the stipulated fee; but any abatement thereof, in view of the additional charge imposed upon him, must be a matter of *agreement*—it is not a matter of *right*.

This was a rule against James T. Archer, solicitor of Robert Lumpkin, to show cause why he should not be ordered to pay to Thomas Randall the sum of $667.93, for his fees in the case of the Southern Life Insurance and Trust Company vs. Augustus H. Lanier, in which case final judgment was rendered in this Court.

Notice of this motion was duly served on all the parties interested.

The following answer was made by James T. Archer:

The answer of James T. Archer, an attorney of this Court, to the rule of Thomas Randall, Esq., served upon him in relation to the claim of the said Thomas Randall to commissions and fees, out of the proceeds of a judgment rendered in this Court in favor of the Southern Life Insurance and Trust Company vs. Augustus H. Lanier, which judgment is for the use of Robert Lumpkin.

This respondent answers and says that he was a solicitor in said cause, and received a notice from the said Randall to retain of the proceeds the amount of his claim; that Thurston Lumpkin, agent of Robert Lumpkin, claimed to have received the claim against Lanier in payment of liabilities of the Southern Life Insurance and Trust Company held by said Robert Lumpkin, and that the commissions of said Thomas Randall ought to attach to the moneys received by the Company, and not the proceeds in the hands of the purchaser. He also claimed that he knew nothing of the claim for commissions by said Randall.

The respondent further answers that said judgment was settled without the payment of money, and by securities, payable on time, the first instalment, for $8,000, including interest, falling due 15th January, instant; that said Lumpkin has paid to W. G. Davis, as solicitor, the sum of two thousand dollars, for his professional services, and to James T. Archer the like sum, the said last mentioned solicitor having been employed by Robert Lumpkin after the said assignment of said claim.

This respondent further says that he received the notes and securities taken in payment of said claim, and held the same at the time of the notice by said Randall to him to retain, and this respondent now has in his hands, of said claims, securities to the amount of six hundred dollars, fall-

ing due and payable, in New York, the 15th January, instant.

This respondent submits to the Court what should be done by him in the premises, and is ready to abide the order to be made.     JAMES T. ARCHER,
9th January, 1853.                    *For himself.*

The following agreement between the Southern Life Insurance and Trust Company and Randall & Hagner, attorneys, of whom said Thomas Randall is survivor, was offered in evidence to the Court, viz:

In the cases of Southern Life Insurance and Trust Company, complainants in foreclosures of mortgages, &c. :

The undersigned agree as follows :—We will file the bills in Chancery and direct issuing of process and docketing the cases, for fifty dollars for each bill filed.

If the case is compromised before decree, an additional charge of twenty-five dollars, in full for all services rendered in such cause.

If the decree is rendered and prosecuted by sale, then three per cent. is to be allowed, in lieu of the twenty-five dollars above in case of compromise, for all moneys realized, or if no sale is had upon the property, to fix the value, then the commission to be allowed upon the cash value to be determined. .

(Signed)     RANDALL & HAGNER.
Tallahassee, May 30, 1846.

The foregoing is copy of original in my possession.
                    ROB. LYON, *Cashier.*
Approved June 3, '46.

It was further shown to the Court that Randall & Hagner filed the bill for the foreclosure of mortgage in the case of the Southern Life Insurance and Trust Company vs. A. H. Lanier; that they were solicitors of record, and there

Randall vs. Archer.—Opinion of Court.

was nothing to show that they ever abandoned the case or were discharged therefrom. It further appeared that the moneys in the hands of James T. Archer were received under a decree rendered in the case. During the progress of the cause, the Southern Life Insurance and Trust Company assigned all its interest therein to Robert Lumpkin, who employed other counsel.

*M. D. Papy* for Randall.

*J. T. Archer* contra.

DuPONT, J., delivered the opinion of the Court.

This is a *rule nisi*, moved at the instance of Thomas Randall, against James T. Archer, an attorney and solicitor of this Court, to show cause why he should not be compelled to pay over to the said complainant the sum of six hundred and sixty-seven dollars and ninety-three cents, which he claims to be due him as solicitor's fees, for services rendered in a certain cause decided at the last January term of this Court, wherein the " Southern Life Insurance and Trust Company" was plaintiff and Augustus H. Lanier was defendant, and in which cause a final decree was rendered in this Court against the defendant.

The answer of the respondent discloses the following state of facts, viz :—That the claim which constituted the cause of action in the said suit, had been assigned by the Southern Life Insurance and Trust Company to Robert Lumpkin, the present owner, in payment of certain liabilities which he held against said Company ; that respondent and W. G. M. Davis, Esq., were employed by the said assignee to conduct the prosecution of the said cause, and for which service they each received from Lumpkin the sum of two thousand dollars ; that upon a final decree being rendered in said cause, the same was settled by the defendant, La-

nier, by certain "securities," which were in the hands of respondent, as solicitor, at the time that the notice to retain was served upon him by complainant, and that he now has in his hands of said securities the amount of six hundred dollars, falling due and payable in New York, on the fifteenth day of January, instant.

It was admitted at the hearing that the original bill of complaint was filed by the late firm of Randall & Hagner, of which complainant is the surviving partner, and that all the testimony used in the trial of the cause, was prepared under their professional supervision ; that the assignment to Lumpkin and the employment of Archer and Davis took place during the pendency of the suit in the Circuit Court; that complainant had never been formally dismissed from the cause, but continued to consult and advise with the newly employed solicitors down to the final decision of the cause in this Court. The complainant exhibited a written contract with the Southern Life Insurance and Trust Company, and relied upon the same as evidence of the amount of his bill for Solicitor's fees in that particular case.

It was further admitted, in the course of the argument, that the securities received from Lanier, in settlement of the decree, had been in the hands of the receiver appointed in the case, and that they were afterwards, by the consent of parties, transferred to the custody of the respondent, to abide the order of the Court in the premises, touching the claim of the complainant.

Upon this state of facts, three questions were presented by the respondent, viz :

*First.*—Whether the "attorney's lien" followed the proceeds of the decree in the hands of the assignee of the debt?

*Secondly.*—Whether the complainant, *under the terms of his agreement* with the Southern Life Insurance and Trust Company ought to be allowed "commissions" upon

the amount recovered, or be confined to the stipulation for a *specific fee* for filing the original bill of complaint?

*Thirdly.*—Whether, if "commissions" be allowed, the same ought to be calculated on the gross amount of the recovery, or only on the nett amount, after deducting the four thousand dollars paid by the assignee to his solicitors?

We shall consider each of the questions in their place, and in order the more lucidly to present our views, it is necessary to premise that by the agreement entered into between Randall & Hagner and the Southern Life Insurance and Trust Company, they were to receive for the filing of the orignal bill and the issuing of process, the stipulated sum of fifty dollars. If the case should be compromised before final decree, then an additional fee of twenty-five dollars, in full satisfaction for all services; and if a decree be rendered, and the same be prosecuted by *sale*, then three per cent. on all moneys realized, to be allowed in lieu of the stipulated amount of twenty-five dollars; and if no *sale* be had, to fix the value, then such commissions to be allowed upon the cash value of the property, to be determined.

Upon the first point, it was contended by respondent, (who also appeared for and represented the interest of Lumpkin, the assignee of the debt,) that the assignee took the claim free from any lien save to the amount of seventy-five dollars, which amount he had stipulated in his agreement with the Company to pay to their attorneys, as their full demand for professional services, arising under the second clause of their contract, and that if there was any claim for "commissions," by virtue of the terms of said contract, the claim was rightfully against the company, and the lien attached to the "liabilities" received by the Company as the consideration of the sale of the debt to the assignee, and not upon the fund in Court. We are of a different opinion.—

To drive the attorneys to a resort to the fund received by the company in consideration of the assignment, is effectually to deprive them of even the semblance of a "*lien*"— their demand in such case becomes simply an ordinary debt against the Company; for of what avail is their *right of lien* when the fund upon which it is to attach is out of and removed beyond their control? The *corpus* of their lien was the bond and mortgage of Lanier, which had been placed in their custody for suit, and the *consummation* of their right, was limited only by the termination of the suit and the realization of its proceeds.

It was further contended upon this point that by the terms of the agreement between the assignor and assignee, for the sale and purchase of the debt against Lanier, it was stipulated that the assignee was to take the debt, subject only to a charge of seventy-five dollars, to be paid to the attorneys who had instituted the suit. To this we say that no arrangement entered into between the assignor and assignee, and to which the attorneys were not a party, will operate to divest their lien, and that in all assignments, whether legal or equitable, the assignee takes, *subject to existing rights.*

But upon a full review of the facts in this case, Lumpkin has no just cause to complain of this assertion of the right of lien. He had not only constructive but actual notice of its existence. The public records and files of the Court furnished ample evidence of the relation which these attorneys bore to the claim which he was about to purchase, and his own stipulation to settle with them the amount of seventy-five dollars, is proof conclusive that he had actual notice of that relation. As a cautious and prudent man, he ought to have sought from the proper source the extent of the attorneys' lien. It was his misfortune to have relied too implicitly and exclusively upon the repre-

sentations of the officers of the Company, (doubtless growing out of a misconstruction of the contract which they had entered into with their attorneys,) and whatever right these representations may give him to claim re-imbursement from the company, they certainly cannot be permitted to operate to the detriment and injury of an innocent third party.

Upon the second point raised by the respondent, we are clearly of the opinion that the complainant is entitled, under the terms of his contract, to compensation by way of "commissions." By reference to the written agreement, it will be seen that the stipulation for the specific fee of seventy-five dollars, was to operate only in the event of "a compromise of the case before decree," and to sustain the position taken, it must be established that the case was so "*compromised*." We do not agree with the counsel that the arrangement entered into between Lumpkin and the Company was a "compromise" within the spirit and meaning of the contract. Indeed, there was no compromise of the case before decree. The arrangement was simply an ordinary "assignment" of the debt upon which the suit had been brought. The first and most essential element of a compromise is lacking—the participancy and assent of Lanier, the debtor—and no arrangement to which he was not a party can bear that interpretation. But for the subsequent employment by the assignee of additional counsel, this controversy would probably never have arisen; and in view of the fact that the complainant was never dismissed from the cause, but continued his relation thereto as counsel and solicitor, to its termination, we are of opinion that he is equitably entitled to the full benefit of the agreement entered into with the original owners of the debt.

We feel no difficulty in ruling the third point also in favor of the complainant. It would be establishing a dan-

gerous doctrine to admit the right of a client, at his own option, by the employment of additional counsel, to reduce the amount of the compensation or fee which he had stipulated to pay to the original attorney. It is true that it not unfrequently happens that in the progress of a cause unfereseen difficulties arise, which make it advisable to call in the assistance of other counsel, and that in such cases the original attorney consents, in view of the additional charge upon his client, to abate the amount of compensation originally stipulated, but this, whenever it does occur, must be matter of agreement—it is not a matter of right.

It may be proper to be noted that the Southern Life Insurance and Trust Company, upon notice of this rule, appeared by attorney and *disclaimed* any interest in the controversy.

Upon a full view of the whole case, we are of opinion that the rule must be made absolute, and do therefore order that the respondent, James T. Archer, do pay to the complainant, Thomas Randall, out of the securities in his hands, when realized, the sum of six hundred and sixty-seven dollars and ninety-three cents, the amount of his bill for attorney's fees, due in the case of the Southern Life Insurance and Trust Company vs. Augustus H. Lanier. The costs of this rule to be paid by complainant.