In the Matter of FIDELITY STANDARD MORTGAGE CORP., f/k/a S.B.I. Investors Corp., and First Fidelity Financial Services, Inc., Debtors.

Kenneth S. SANDLER, P.A., Plaintiff,

v.

A.W. BECK, Trustee, etc., Defendant.

Bankruptcy Nos. 82–00637–BKC–JAG, 82–00638–BKC–JAG. Adv. No. 83–0482–BKC–JAG–A.

United States Bankruptcy Court, S.D. Florida.

Oct. 25, 1984.

Chad P. Pugatch, Fort Lauderdale, Fla., for trustee.

A.W. Beck, Trustee.

Kenneth S. Sandler, P.A., Hollywood, Fla., for plaintiff.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOSEPH A. GASSEN, Bankruptcy Judge.

THIS CAUSE came on for trial on July 18, 1983, upon the Plaintiff's Complaint seeking, primarily, imposition of an attorney's charging lien or an equitable lien upon the proceeds of sale of certain real properties which are a part of the Debtors' estate herein. The Defendant, A.W. BECK, TRUSTEE, has filed his Answer and Affirmative Defenses, denying Plaintiff's right to imposition of such liens and raising, in addition, the Trustee's avoiding powers pursuant to 11 *U.S.C.* § 544(a).

The facts are not in material dispute. The Debtors were engaged in the sale and servicing of fractionalized interests in mortgages in the State of Florida. The Debtors filed Voluntary Petitions under Chapter 7 of the Bankruptcy Code on April 9, 1982. Pursuant to the Debtors' application, the cases were converted to Chapter 11 on May 20, 1982. The Debtors voluntarily reconverted to Chapter 7 on January 10, 1983.

Prior to the initial filing on April 9, 1982, the Plaintiff, KENNETH S. SANDLER, P.A., was retained by the Debtors to perform legal services to foreclose certain mortgages held or serviced by the Debtors. The verbal fee arrangement between the Plaintiff and the Debtors provided that in the event a Final Judgment of Foreclosure was entered and the subject real property was subsequently acquired by the Debtors or their investors at the resulting foreclosure sale, the Debtors would pay to Plaintiff the court-awarded fee as set forth in the Final Judgment of Foreclosure. This amount was to be paid from the proceeds of the ultimate sale of the subject real property by the Debtors.

Prior to the filing of the Voluntary Petitions on April 9, 1982, the Plaintiff had been awarded attorney's fees by the state court in various foreclosure actions which had not been paid by the Debtors at the time of filing. There was no evidence presented to indicate that these properties had been sold prior to the filing therefore triggering the obligation to render the payment which was accrued but not yet due. Plaintiff further, without having been formally appointed by the Court completed, with the apparent knowledge and consent of the Debtor in Possession, two foreclosures on cases known as "Palumbo" and "Ambros" in which total court awarded fees of $4,680.00 were accrued. Plaintiff may have engaged in certain work during the initial Chapter 7 phase of the case between April 9, 1982 and May 20, 1982, however, there is no evidence that this was performed with the approval or consent of the Trustee or that court approval was obtained for said services.

Those properties for which Plaintiff had rendered services and foreclosure was completed prior to the filing of the initial Voluntary Petitions on April 9, 1982, and for

which Certificate of Title was issued in favor of the Debtors became, upon filing property of the estate herein pursuant to the provisions of 11 *U.S.C.* § 541. The foreclosures in progress at the time of filing which were completed during the Chapter 11 phase of this case were also assets of the estate pursuant to 11 *U.S.C.* § 541 and remain property of the estate after completion of the foreclosures and issuance of Certificate of Title in favor of the Debtor in Possession. This interest passed to the Trustee after reconversion of the case on January 10, 1983.

Based upon the foregoing, Plaintiff asserts a right, under Florida law, to a charging lien upon the ultimate proceeds of sale of the real properties in keeping with his original fee arrangement with the Debtors. In the alternative, he seeks an equitable lien upon the proceeds of sale based upon unjust enrichment to the Debtors. The Court finds that Plaintiff, under applicable law, and in view of the Trustee's avoiding powers, is not entitled to either a charging lien or equitable lien upon the proceeds of sale.

■ Under Florida law, an attorney's charging lien does not attach until after the judgment or recovery has been obtained. *Cooper v. McNair*, 49 F.2d 778 (D.C.Fla. 1931). However, such a lien will *normally* relate back and take effect from the time of commencement of services rendered in the action. *Randall v. Archer*, 5 Fla. 438 (1854).

■ The Court first notes that no evidence was presented establishing the ultimate sale of the real properties resulting in proceeds to which Plaintiff's asserted lien would attach. Plaintiff, pursuant to his fee agreement with the Debtors, claims his lien only on the proceeds of sale of the properties and not the real property itself. This is further supported by the general principles of Florida law, wherein it is clear that, in the absence of statutory authority or express contract or implied agreement arising out of special equitable circumstances, an attorney is not entitled to the imposition of a charging lien on the real estate of his client, even if he has successfully prosecuted a suit to establish a client's title or recover title or possession for the client. *Guthrie v. Home Building & Loan Company*, 116 Fla. 822, 156 So. 882 (1934); *Billingham v. Thiele*, 107 So.2d 238 (2nd DCA Fla.1958), *cert. dismissed*, 109 So.2d 763. *Overholser v. Walsh and Nottebaum*, 362 So.2d 471 (3rd DCA Fla.1978). Absent the existence of such proceeds then, no lien could even attach.

■ Assuming that the lien did not attach, the Court must still determine the priority of the charging lien as measured against the Trustee's avoiding powers under 11 *U.S.C.* § 544(a), in that a charging lien will be subject to any rights in property which are valid against the client at the time the lien attaches. 4 Fla.Jur. 2, *Attorneys at Law*, § 162. *See, also, Re: Diplomat Electric, Inc.*, 499 F.2d 342 (5th Cir. 1974). *In Re: Hanson Dredging, Inc.*, 15 B.R. 79 (B.C.S.D.Fla.1981).

The Trustee's avoiding powers under 11 *U.S.C.* § 544(a) are well established, and, undisputedly, the Trustee will occupy the position of the ideal judicial lien creditor and bona fide purchaser of real property as of the commencement of the case.

Normally, this would not disturb a charging lien in the instant circumstances, inasmuch as the lien has been held to relate back to the time of commencement of services, *Randall, supra*, thus giving it priority over a judgment rendered subsequent to the commencement of services. *Miles v. Katz*, 405 So.2d 750 (4th DCA Fla.1981).

It is upon this theory that the cases cited by Plaintiff rely, *Matter of TLC of Lake Wales, Inc.*, 13 B.R. 593 (B.C.M.D. Fla. 1981). *In Re: E.C. Ernst, Inc.*, 4 B.R. 317 (B.C.S.D. N.Y.1980).

■ However, this is not to say that the avoiding powers of the Trustee cannot defeat a charging lien, even where the services were commenced prior to the commencement of the Voluntary Petition, as in the instant case. For, it is also clear, that:

"A charging lien is deemed to be waived if the attorney neglects to enforce it until ... an innocent third person has, for valuable consideration, purchased the fruits of the judgment." 7 Am.Jur.2d, *Attorneys at Law* § 335. *See, also,* 4 Fla.Jur.2d, *Attorneys at Law* § 163.

Looking at the facts of the instant situation, the Plaintiff, by his own admission, has his lien not upon the real property itself, but upon the proceeds of sale thereof, once the property has been sold.

█ Since the lien of the Plaintiff, both factually and as a matter of Florida law, will attach only to the proceeds of sale of the subject real property, the lien may be defeated, as against the Trustee, if the property is deemed to have been conveyed to a hypothetical ideal bona fide purchaser for value as of the commencement of the case. Pursuant to the clear mandate of 11 *U.S.C.* § 544(a), the Defendant, A.W. BECK, TRUSTEE, occupies precisely the position of this ideal bona fide purchaser of real property who, pursuant to the language cited above, has "purchased the fruits" of the judgment. 4 Fla.Jur.2d, *Attorneys at Law* § 163.

The *TLC* and *Ernst* cases cited by Plaintiff really do not dispel this result. Neither of these cases really dealt with the precise issue at hand. *TLC* was predicated on the old Act, wherein the Trustee's avoiding powers did *not* include those of a bona fide purchaser of real property. The Court in that case had only to deal with the issue in relation to the judicial lien, which, as cited above, involves different considerations. And, in *Ernst,* also predicated upon the old Act, the Court further had to deal with a statutory relation back provision not applicable in Florida.

In short, even though the applicable case law may provide the Plaintiff with a way around the attachment of the judgment lien as of the commencement of the case, it will not protect him from the Trustee's ability to assert the position of a bona fide purchaser of the real property for value. Accordingly, the Plaintiff's lien should be avoided and his claim for prepetition services relegated to a general unsecured claim.

█ The Plaintiff has, likewise, failed to establish a right to an equitable lien. There has been no showing of unjust enrichment to the Debtors, the beneficiary of the proceeds of sale being the Trustee in Bankruptcy on behalf of the creditors of the estate. There has been no showing that Plaintiff was defrauded or otherwise mislead to perform the prepetition services other than in accordance with his verbal fee arrangement with the Debtors. Plaintiff was simply caught in the unfortunate position, as were many creditors of this estate, of an intervening bankruptcy having occurred prior to the time the debts owed to Plaintiff would become due and payable.

█ As to the portion of the services rendered by the Plaintiff during the Chapter 11 phase of the case, those being the services rendered in connection with the "Palumbo" mortgage and the "Ambros" mortgage, in the total amount of $4,680.00, although Plaintiff's services were never expressly authorized by the Court, it is obvious that these services were rendered at the request of, and with the knowledge and consent of, the Debtor in Possession. Upon equitable grounds, the Court therefore finds that Plaintiff is entitled to an award of the sum of $4,680.00 as a Chapter 11 administrative expense herein. As to any remaining sums claimed by Plaintiff as a result of his prepetition services for the Debtors, Plaintiff shall have thirty (30) days from the date of the Final Judgment entered in accordance with these Findings and Conclusions within which to file an appropriate general unsecured Proof of Claim for said amounts.

A separate Final Judgment shall be entered in accordance with these Findings of Fact and Conclusions of Law.