In re **HOOKER INVESTMENTS, INC.;**
**LJ Hooker Corporation, Inc., et**
**al., Debtors.**

In re **LJ HOOKER INTERNATIONAL**
**FLORIDA, INC., Debtor.**

**Bankruptcy Nos. 89 B 11986 (TLB) to 89 B 12000 (TLB), 89 B 12199 (TLB), 89 B 12389 (TLB), 89 B 12696 (TLB), 89 B 12741 (TLB), 89 B 13337 (TLB), 89 B 13340 (TLB), 90 B 10058 (TLB), 90 B 10374 (TLB) to 90 B 10395 (TLB), 90 B 10675 (TLB), 90 B 10733 (TLB), 90 B 10381 (TLB).**

United States Bankruptcy Court,
S.D. New York.

July 13, 1990.

Gendel Raskoff Shapiro & Quittner, Los Angeles, Cal. by Hydee R. Feldstein and Howard Steinberg, Co–Counsel and Proskauer Rose Goetz & Mendelsohn, New York City, Co–Counsel, for debtors.

Fulbright Jaworski & Reavis McGrath, New York City by William J. Rochelle, III, and David A. Rosenzweig, for Maurice Gelina and Maurice Gelina & Associates, Inc.

## DECISION ON MOTION FOR DAMAGES FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY

TINA L. BROZMAN, Bankrupty Judge.

### I.

LJ Hooker International Florida, Inc. ("Hooker Florida" or the "Debtor") seeks damages against Arthur Rice ("Rice") and Maurice Gelina ("Gelina") for willful violation of the automatic stay under § 362(h) of the Bankruptcy Code.[1] The parties to this dispute are by no means strangers. Hooker Florida, a part of the real estate arm of LJ Hooker Corporation, Inc., was a real estate and mortgage broker maintaining offices in Tampa, Orlando and Miami, Florida. It filed a Chapter 11 petition on February 8, 1990. Gelina, a real estate broker, was the manager of the Debtor's Miami office. Rice, now counsel to Gelina, served as counsel to both Gelina and Hooker Florida prior to his termination by the Debtor on February 15, 1990.

In May, 1989, Rice commenced two actions on behalf of the Debtor to recover real estate commissions in Florida state court (the "GMCVB Action" and the "Brickell Action"). Procedural maneuvers in the GMCVB and Brickell Actions are at the heart of the parties' controversy here. Equally important to an understanding of this dispute is an agreement prepared by Rice after he commenced the GMCVB and Brickell Actions apparently at a time while he was acting as counsel to both the Debt-

---

1. The salient facts are contained in certain un- disputed affidavits submitted by the parties, all of whom waived their rights to present live testimony respecting so much of the motion as seeks a declaration that the stay was violated and that actions taken in derogation thereof have no force and effect. The parties agreed to defer a hearing on damages, if one be required, until a later date.

or and Gelina. In July, 1989, the Debtor, Gelina and Maurice Gelina & Associates, Inc. ("Associates"), a newly formed corporation to be wholly owned by Gelina, entered into a certain Employment and Co-Brokerage Agreement (the "1989 Agreement") pursuant to which Hooker Florida assigned to Gelina 67% of the commissions earned as of the agreement date, including the commissions sought in the GMCVB and Brickell Actions. Commissions were to be paid directly to Gelina who would remit 33% of each one back to the Debtor. Future transactions were to be handled in a similar fashion but through Associates rather than Gelina, with Associates retaining 67% of the commissions which it collected and remitting the remaining 33% to the Debtor. (Debtor's Exhibit 1 at ¶¶ 1–4).

Although I am not certain when the relationship between the Debtor, on the one hand, and Gelina and Associates, on the other, turned adversarial, the battle lines were clearly drawn at some time during the month or two preceding the petition date. In January, 1990, the defendants in the GMCVB Action brought a motion for summary judgment alleging that the Debtor was not the proper plaintiff in the action. Thereafter, but prior to the Debtor's bankruptcy, Rice filed a motion to add or substitute Gelina as the party plaintiff in the GMCVB Action. Rice claims that his motion was a response to the motion for summary judgment filed by the defendants. The Debtor disputes this contention and maintains that notwithstanding his claimed innocent motive Rice had no authority to bring the motion.

On February 9, 1990, Gendel, Raskoff, Shapiro & Quittner, bankruptcy co-counsel to the Debtor, notified Rice in writing of the filing of the Debtor's petition on the preceding day and advised him that the stay imposed by § 362 enjoined him from taking any act to obtain possession or control of property of the estate. Rice was also advised in the same letter of the Debtor's position that the commissions assigned to Gelina were in whole or in part property of the estate. (Debtor's Exhibit 3). Un-

daunted by counsel's admonition, Rice appeared before the Florida state court on February 13, 1990 and obtained an order substituting Gelina as party plaintiff in the action. This is the first act of Rice and Gelina said to have violated the automatic stay.

On March 6, 1990, Rice gratuitously filed a second motion, this time in the Brickell Action, to permit Gelina to substitute in as party plaintiff in that action. This is the second act which the Debtor assails. Before the motion was heard, however, the action was removed by the Debtor to the Florida Bankruptcy Court and subsequently transferred to this court, where it is now pending. Rice was busy on March 6, 1990; he also filed notices of charging liens, prompted perhaps by settlements in principle which had been reached with the defendants in the two actions.[2] The filing of the charging liens is also said to be violative of the stay.

In late March, 1990, the Debtor rejected the 1989 Agreement as provided in § 365 and commenced an adversary proceeding against Gelina and Associates to avoid the 1989 Agreement as a preference or a fraudulent conveyance. Gelina and Associates have filed a motion for summary judgment in the adversary proceeding as well as a motion for a preliminary injunction to prohibit the Debtor from interfering in the efforts to collect the real estate commissions. Neither of those motions is ripe for adjudication.

## II.

The Debtor seeks now to have me declare void all of the actions just described which it claims violate the stay. Gelina and Rice maintain that there was no stay violation in that the Debtor assigned to Gelina the right to collect the commissions, leaving no property interest in the Debtor susceptible of protection by the automatic stay. Moreover, Rice maintains that the filing of the charging liens was in the proper exercise of his rights under Florida law and was not an act stayed by § 362. In an

---

**2.** Neither settlement has been effectuated.

effort, perhaps, to gain a leg up in the adversary proceeding, Rice and Gelina further argue that the Debtor's rejection of the 1989 Agreement precludes it from now challenging the validity of the agreement.[3] Finally, Rice and Gelina argue that sanctions under § 362(h) may not be sought by motion but only by adversary proceeding.

### III.

■ A. Characterizing the relief requested by the Debtor as money damages and an injunction, Rice and Gelina urge that the Debtor was required to begin an adversary proceeding. But nowhere in the Debtor's motion is injunctive relief requested; what the Debtor seeks is a declaration that the stay was violated so that the actions taken are void and, if it is successful in obtaining that declaration, damages. Bankruptcy Rule 7001 sets forth ten proceedings which must be commenced by adversary proceeding. A request for sanctions under § 362(h) arising from willful violation of the automatic stay is not among the proceedings enumerated. Although few cases have specifically addressed the issue, at least one has squarely held that the imposition of sanctions under § 362(h) may be sought by motion rather than complaint, *Fortune & Faal v. Zumbrun (In re Zumbrun)*, 88 B.R. 250 (9th Cir.B.A.P.1988), and several others have implicitly recognized this. *Karsh Travel, Inc. v. Airlines Reporting Corp. (In re Karsh Travel, Inc.)*, 102 B.R. 778 (N.D.Cal. 1989); *In re Depew*, 51 B.R. 1010 (Bankr.E. D.Tenn 1985); *Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289 (4th Cir.1986); *cf. In re Elegant Concepts Ltd.*, 67 B.R. 914 (Bankr.E.D.N.Y.1986) (where respondents raised no objection to fact that sanction request was sought by motion rather than by adversary proceeding, if there was any procedural irregularity, respondent waived it).

In *Fidelity Mortgage Investors v. Camelia Builders, Inc. (In re Fidelity Mortgage Investors)*, 550 F.2d 47 (2d Cir.1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540, *reh'g denied*, 430 U.S. 976, 97 S.Ct. 1670, 52 L.Ed.2d 372 (1977), the Second Circuit affirmed a district court contempt order brought on by motion rather than by the filing of a summons and complaint. Although *Fidelity Mortgage* was decided under the former Bankruptcy Act, Bankruptcy Rule 701, the rule in effect at the time, which governed the filing of adversary proceedings, was virtually identical to Bankruptcy Rule 7001. The court held that the standards of due process were satisfied.

Both the *Fidelity Mortgage* and *Zumbrun* courts recognized that the due process safeguards contained in a motion brought in a contested matter under Bankruptcy Rule 9014 are no different from those in an adversary proceeding. *Zumbrun, supra* at 252–53. As a result, I find no procedural bar to the relief.

B. For the Debtor to prevail, it must have retained an interest in the commissions which constituted property of the estate protected by the automatic stay. Section 541 provides that a debtor's estate is comprised of all interests both legal and equitable existing as of the commencement of the case. 11 U.S.C. § 541(a). It is well settled that a debtor's causes of action are property included within the broad scope of § 541(a). *See Mitchell Excavators, Inc. v. Mitchell*, 734 F.2d 129, 131 (2d Cir.1984) (bankruptcy estate includes debtor's causes of action); 4 L. King, *Collier on Bankruptcy*, ¶ 541.10[1] (15th ed. 1990). Although the terms "property" and "interests" are not defined in § 541 of the Code, state or applicable nonbankruptcy law generally defines the "interests" in property while federal law determines whether the property becomes property of the estate. *In re Howard's Appliance Corp.*, 874 F.2d

---

3. Rice and Gelina have not argued in this motion that the rejection served to vest Gelina with ownership of 100% of the commissions earned nor have Rice and Gelina demonstrated that this issue is relevant to the present motion. The acts which are claimed to have violated the stay occurred before the contract was rejected. In any event, as the Debtor aptly points out, if the agreement is valid, the Debtor may only have a 33% interest in the commissions whereas if the agreement is invalid, the Debtor may arguably have a 100% interest in the commissions.

88, 93 (2d Cir.1989); *Harry Brainum, Jr., Inc. v. Shore Air Conditioning & Refrigeration, Inc. (In re Shore Air Conditioning & Refrigeration, Inc.)*, 18 B.R. 643 (Bankr.D.N.J.1982). Therefore, the scope of what the Debtor retained is to be determined under Florida law.

■ Rice and Gelina's main line of defense is that the 1989 Agreement divested the Debtor of its interest in the commissions by providing that they be paid to Gelina. In support of this argument, they offer letters by Ralph Edwards, the Debtor's president, advising the defendants in the GMCVB and Brickell Actions of the Debtor's assignment of the commissions to Gelina. These letters, however, are inadmissible; in the absence of ambiguity in the agreement, its meaning must be determined from the four corners of the document, without resort to extrinsic evidence. *Suarez v. Ward*, 896 F.2d 28, 30–31 (2d Cir.1990); *Curry Road Ltd. v. K Mart Corp.*, 893 F.2d 509, 511 (2d Cir.1990); *International Klafter Co. v. Continental Cas. Co.*, 869 F.2d 96, 99 (2d Cir.1989); J. Calamari and J. Perillo, *The Law of Contracts*, § 3–9 at 117 (2d ed. 1977). Here, the 1989 Agreement in plain and unambiguous terms provides for the assignment to Gelina of only 67% of the commissions earned as of the agreement date and for the retention by the Debtor of the remaining 33%. The conclusion is inescapable that the Debtor retained an interest in the commissions, the 1989 Agreement constituting, at best, only a partial assignment of the Debtor's claim.[4]

■ In a fallback position, Rice and Gelina posit that since collection of 100% of the commissions was delegated to Gelina, the Debtor had no interest to be protected by the automatic stay. Accepting for these purposes their characterization of the transaction as an assignment of collection[5]

to Gelina, one is still left with the conclusion espoused by the Debtor, that it, as assignor, retained a sufficient interest in the commissions to be a real party in interest in the actions. *See Rohner, Gerhig & Co. v. Capital City Bank*, 655 F.2d 571, 579 (5th Cir.1981); 6A C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure*, § 1545 (2d ed. 1990).

Rice and Gelina contend that Rice's actions were consistent with the terms of the 1989 Agreement since it purportedly gave Gelina the right to sue. They rely on paragraph 7(b) of the Agreement which states that Associates "shall perform all of the duties commonly associated with that of a real estate brokerage firm ..." (Debtor's Exhibit 1 at ¶ 7(b). Although Rice and Gelina have cited no authority for their assertion that the right to sue on behalf of a partial assignor to the broker is "commonly associated" with a real estate brokerage firm, even were I to assume this to be the case, paragraph 7(b) deals solely with Associates' rights to *future* commissions, not Gelina's authority to sue for commissions which already had been earned. The agreement does not grant Gelina the right to sue on behalf of the Debtor for outstanding commissions.

Nonetheless, Rice and Gelina press the position that Gelina has the exclusive right to the GMCVB and Brickell Actions. They claim that facts here are distinguishable from those presented in the recent Second Circuit decision in *Crysen/Montenay Energy Co. v. Esselen Associates, Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098 (2d Cir.1990). In *Crysen/Montenay*, the Second Circuit held that a pre-petition tort action commenced by a third party was property of the estate and that its commencement violated the automatic stay.

---

4. Even were I to permit the introduction of the letters into evidence, they are consistent with the terms of the parties' agreement. The letters indicate that although Gelina was charged with the duty to collect the commissions, he remained responsible for remitting a portion of each back to the Debtor, thereby expressly confirming the Debtor's interest.

5. A partial assignment for collection is one where an intention is manifested that the assignee shall enforce the entire claim against the debtor and, having done so, shall retain part for himself and turn over the remainder to the assignor. 3 *Williston on Contracts*, § 441 (3d ed. 1960).

Esselen first sued Crysen, which impleaded Con Edison. When Crysen filed its bankruptcy, Esselen voluntarily dismissed its action against Crysen. Later, believing it had a claim directly against Con Edison, Esselen sued Con Edison. Significantly, Crysen had not sought to pursue any claim against Con Edison. Not until one year later did Crysen claim that the right to recover from Con Edison was property of the estate and move to enjoin Esselen and for sanctions. The circuit court affirmed the bankruptcy court's decision, holding that Esselen violated the stay because the tort claim was the exclusive property of the debtor's estate. *Crysen/Montenay* would only serve to vindicate Rice and Gelina if Gelina, like the debtor in that case, possessed the exclusive right to sue.

According to *Williston,* in the case of a partial assignment, the assignee owns the part assigned to him, the assignor the balance; each is a real party in interest as to his part of the claim. *Williston, supra* at § 443, n. 14. *Williston* further notes that a partial assignee may intervene in an action commenced by an assignor as long as the assignor is a party to the litigation. The two notable exceptions which are not applicable to the facts here are where the obligor consents to the partial assignment or by waiver of the partial assignor. *Williston, supra* at § 443. Therefore, neither the Debtor nor Gelina had the exclusive right to the causes of action and each was a real party in interest to the litigation. *Cf. Atlantic City v. American Casualty Ins. Co.,* 254 F.Supp. 396, 399 (D.N.J.1966) (partial assignee and partial assignor are necessary but not indispensable parties). This view is entirely consistent with Florida law. In *Space Coast Credit Union v. Walt Disney World Co.,* 483 So.2d 35 (Fla. Dist.Ct.App.1986), the court noted that "it is also well established that if the assignment is partial only, it cannot be enforced against the debtor, or the employer, without his consent, or the joinder in an equitable proceeding of all persons entitled to the various parts of the total debt." *supra* at 36.

Rice and Gelina would have me read *Crysen/Montenay* to exempt them from any declaration that they violated the stay because the Debtor did not have the exclusive interest in the causes of action. But in so arguing, they ignore the fundamental distinction between *Crysen/Montenay* and this dispute. In the former, the violation of the stay occurred when Esselen commenced its suit. In the latter, the Debtor acknowledges that Gelina had an ability to assert his interest in the GMCVB and Brickell Actions; what Rice and Gelina did, however, was to preclude or attempt to preclude the Debtor from asserting its own interest in the actions. In other words, the argument properly advanced here is that whereas Gelina may have been entitled, unlike Esselen in *Crysen/Montenay,* to assert his own rights, he could not legitimately preclude the Debtor from doing the same.

The Debtor's remaining interest in the commissions falls squarely within the contours of its estate under § 541(a). As property of the estate, the Debtor's interest is afforded the full protections of the automatic stay. *See Rockefeller Group, Inc. v. I.S.H. Liquidating Corp. (In re 48th Street Steakhouse, Inc.),* 835 F.2d 427 (2d Cir.1987), *cert. denied,* 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988) (one may not abridge an estate's property interest even indirectly without violating the automatic stay). Accordingly, I find that the substitution of Gelina as party plaintiff in the GMCVB Action and the motion to substitute Gelina in the Brickell Action were acts to obtain possession or to exercise control over property of the estate in violation of the automatic stay. 11 U.S.C. § 362(a)(3).

C. The Debtor further contends that the filing of the Notices of Charging Lien in the GMCVB and Brickell Actions constituted acts to perfect an interest in the property of the Debtor also in violation of the automatic stay. One must look to state law to determine the validity and the effect of the charging liens. *Efraim Rosen, Inc. v. Tavormina (In re Armando Gerstel, Inc.),* 43 B.R. 925 (Bankr.S.D.Fla.1984), *aff'd in part, rev'd in part,* 65 B.R. 602 (S.D.Fla.1986). Under Florida law, a

charging lien is not a creature of statute but of judges. To impose a charging lien, the attorney must show: (1) an express or implied contract between the attorney and client; (2) an express or implied understanding for payment of attorney's fees out of the recovery; (3) either an avoidance of payment or a dispute as to the amount of fees; and (4) timely notice. *Daniel Mones, P.A. v. Smith,* 486 So.2d 559 (Fla. 1986); *Sinclair, Louis, Siegal, Heath, Nussbaum & Zavertnik, P.A. v. Baucom,* 428 So.2d 1383 (Fla.1983); *Earl H. Galitz, P.A. v. Edghill (In re Edghill),* 113 B.R. 783 (Bankr.S.D.Fla.1990). There are no requirements for perfecting a charging lien other than timely notice which is given by filing a notice of lien or by pursuing the lien in the original action. The lien does not attach until after the judgment or recovery has been obtained, but it relates back to the time of the commencement of services. *Kenneth S. Sandler, P.A. v. Beck (In re Fidelity Standard Mortgage Corp.),* 43 B.R. 654 (Bankr.S.D.Fla.1984).

The Debtor contends that Rice failed to satisfy the requirements of a charging lien since there was no understanding between the parties that Rice's fees were to be paid out of the recovery from the GMCVB and Brickell Actions. Citing *Lincoln Savings Bank, FSB v. Suffolk County Treasurer (In re Parr Meadows Racing Ass'n, Inc.),* 880 F.2d 1540 (2d Cir.1989), *U.S. appeal pending,* for the proposition that where a creditor does not have a right under section 546(b) to perfect its lien postpetition, any effort to do so is violative of section 362(a)(4), the Debtor argues that the filing of the notices was in violation of the automatic stay.[6]

The Debtor's theory is not viable unless I can find that there was no understanding, either express or implied, that Rice would be paid from the proceeds of the recovery from the actions. To establish these facts, the Debtor relies exclusively on a declaration by Charles Wright, former general counsel and secretary to the Debtor, submitted not with the original mo-

tion papers, but in the Debtor's reply submission. The declaration states that Wright would testify that there was no agreement that payment of Rice's fees was dependent upon Hooker Florida's prevailing in the lawsuits, or that payment of his fees would be paid from any recoveries in the lawsuits. Declaration of Charles Wright at ¶ 5. Needless to say, Rice in no way concedes this point.

The Debtor argues that I may accept the declaration in lieu of live testimony since Rule 43(e) and Bankruptcy Rule 9006(d) permit a motion to be supported by affidavit. However, in *Dopp v. Franklin National Bank,* 461 F.2d 873, 879 (2d Cir. 1972), the court of appeals noted in the context of a motion for a preliminary injunction that a court generally should not resolve a factual dispute on affidavits, particularly when to do so would resolve the disputed facts in favor of the party who has the burden of establishing its right to relief. *See Flaks v. Koegel,* 504 F.2d 702 (2d Cir.1974); *International Molders' and Allied Workers' Local Union No. 164 v. Nelson,* 799 F.2d 547 (9th Cir.1986). Moreover, Bankruptcy Rule 9006, upon which the Debtor relies, provides that the affidavit shall be served with the motion. The Debtor's motion was originally returnable on April 30, 1990. The Declaration was not served with the original motion papers but included with a supplemental memorandum of law submitted at my request on June 11, 1990, two days before the adjourned hearing date of the motion. It would be inappropriate to allow the Debtor to support by affidavit an essential element where the fact is in dispute, the Debtor has had ample time to prepare its case and the Debtor bears the burden of proof. The admission of an affidavit at this late date would be unduly prejudicial, having afforded no opportunity for cross-examination to the opposing parties on a critical aspect of the Debtor's sanction claim. Accordingly, I find that the Debtor has not sustained its burden of proof, having failed to establish

---

**6.** The Debtor has withdrawn its additional argument that even if a lien could have been assert-

ed, the filing of the notices violated the automatic stay.

that Rice had no right to impose a charging lien on the proceeds in the actions.[7]

## IV.

A. A majority of courts have held acts taken in violation of the automatic stay void and without effect. *Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *In re 48th Street Steakhouse, Inc., supra*, 835 F.2d 427; *Smith v. First America Bank, N.A. (In re Smith)*, 876 F.2d 524 (6th Cir.1989); *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984); *Brodsky v. Independent Cement Corp. (In re Marine Pollution Service, Inc.)*, 99 B.R. 210 (Bankr.S.D.N.Y.1989). Other courts, however, reason that acts in violation of the automatic stay are not void but only voidable given the court's power to annul the automatic stay under § 362. *See, e.g., Massachusetts Mutual Life Insurance Co. v. Columbus Broadway Marble Corp. (In re Columbus Broadway Marble Corp.)*, 84 B.R. 322 (Bankr.E.D.N.Y.1988). The distinction here is merely an academic one since there is absolutely no reason to uphold the actions taken by Rice and Gelina. Had I been requested by them to modify the automatic stay to permit them to drop the Debtor as a party I certainly would not have done so. Thus, the order substituting Gelina as party plaintiff in the GMCVB Action and the motion to achieve the same relief in the Brickell Action are without force and effect.[8]

B.

1. Applicability of section 362(h)

The final inquiry is that of the propriety of imposing sanctions. Section 362(h) permits an individual injured by any willful violation of the automatic stay to "recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, ... punitive damages." 11 U.S.C. § 362(h). The determination is a core matter within the meaning of 28 U.S.C. § 157(b)(1) and (2). *Budget Service Co., supra.* Although not addressed by the court in *Crysen/Montenay*, the word "individual" has been construed by a number of courts to include corporate debtors. *See Budget, supra* at 292; *Maritime Asbestosis Legal Clinic v. LTV Steel Company, Inc. (In re Chateaugay Corp.)*, 112 B.R. 526 (S.D.N.Y.1990); *In re Inslaw, Inc.*, 83 B.R. 89 (Bankr.D.D.C.1988).

2. Damages

In *Crysen/Montenay*, the court announced a standard for all future cases under § 362(h) finding persuasive the reasoning adopted by other circuits. The court declared that "any deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages. An additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages pursuant to 11 U.S.C. § 362(h)." *Crysen/Montenay, supra* at 1105. The court declined to impose sanctions in that case as a result of what it termed the "previously uncertain legal standard governing section 362(h)." *Id.* The court reasoned that "Esselen could not have known at the time it initiated its Eastern District action that it was subjecting itself to sanctions by not first seeking declaration from the bankruptcy court, having as it did a good faith belief that its action did not violate Crysen's automatic stay." *Id.* If Rice and Gelina did not act in good faith I am certainly free to impose sanctions. *See Shimer v. Fugazy (In re Fugazy Express, Inc.)*, 114 B.R. 865 (Bankr.S.D.N.Y.1990) (post-*Crysen/Montenay* case in which court awarded actual damages in the form of attorneys' fees and costs, but not punitive damages, where defendants' actions were knowing).

---

**7.** Rice does admit that his charges were to be billed on an hourly basis, but that is not necessarily inconsistent with an agreement, express or implied, that the fund stand as security for his payment. *See Kenney v. Vandiver*, 414 So.2d 237 (Fla.Dist.Ct.App.1982) (appellate court reversing trial court and holding that attorney was entitled to charging lien for, among other things, services rendered on an hourly basis where client had contracted to pay on that basis).

**8.** This is not to say that Gelina's request to be added as a party is denied in the removed action.

■ There is sufficient evidence of Rice's lack of good faith to impose sanctions in the form of actual damages. Although sanctions are assessable against Rice, I decline to impose sanctions against Gelina, there being no evidence that he directed Rice's course of conduct or that he knew of the actions at the time they were taken.[9] *Johns–Manville Corp. v. Doan (In re Johns–Manville Corp.)*, 26 B.R. 919 (Bankr.S.D.N.Y.1983) (although court assessed sanctions against attorney, court declined to impose sanctions against client notwithstanding client's contempt of court order where client's role was passive); *Colon v. Hart (In re Colon)*, 102 B.R. 421 (Bankr.E.D.Pa.1989) (acts of noncreditor agent may violate the automatic stay); *Elegant Concepts, supra* at 921 (no punitive damages assessed against client where court could not ascertain the extent of client's knowledge of action taken by attorney); *Rhyne v. Cunningham (In re Rhyne)*, 59 B.R. 276 (Bankr.E.D.Pa.1986) (client would not be held in contempt where no evidence of record that client directed attorney to take his contemptuous course or that client knew of it). To punish Gelina would not serve to further the deterrent purpose of § 362(h).

Rice had actual notice of the filing of the Debtor's Chapter 11 petition. More importantly, he was forewarned by Debtor's counsel as to the protections afforded a debtor by § 362, was made aware that any action taken with respect to the Debtor's property could run afoul of the automatic stay, and was specifically advised that the commissions constitute, in whole or in part, property of the Debtor's estate. Rice was obligated to obtain relief from the stay prior to taking any action in the suits which would prejudice the Debtor.

Rice purports to justify the substitution of Gelina as party plaintiff in the GMCVB Action as an attempt to stave off a summary judgment motion filed by the defendants which, if successful, would have been detrimental to both the Debtor and Gelina. Significantly, Rice specifically stated that he was expressing no opinion as to the merits of that motion. (See Affidavit of Arthur Halsey Rice at ¶ 7). Rice's response to the defendant's motion was not only violative of § 362, but inconsistent under state law with the rights of a partial assignee. The bind which Rice now conjectures is a mere contrivance. Had he simply added Gelina as party to the suit, his action would have been both consistent with Gelina's rights as a partial assignee and a measured response to the challenge by the defendants in the GMCVB Action. In any event, Rice's attempted justification does not withstand scrutiny for yet another reason—he interposed an identical motion in the Brickell Action where no motion was pending which could have posed a threat to the viability of the Debtor's action.

The facts here are considerably more compelling than in *Crysen/Montenay*, where the party charged with violating the stay had commenced suit in the face of the debtor's inaction and believed, in good faith, that it had the right to do so. Here, Rice *knew* that the Debtor had an interest in the commissions first, because he had instituted the actions in the name of the Debtor; second, because he had drafted the 1989 Agreement which assigned to Gelina only 67% of the commissions; and third, because the Debtor explicitly informed him as soon as it filed bankruptcy that it considered the commissions, in whole or in part, to be property of its estate. Rice's substitution and attempted substitution of Gelina in lieu of the Debtor constituted a blatant attempt to exercise control over or deprive the Debtor of property of the es-

---

**9.** Although Gelina eventually learned of the filing of the Debtor's Chapter 11 petition, there is nothing to indicate that he was aware of Rice's actions. The only evidence linking Gelina to the acts which violated the stay is a February 19, 1990 letter from Rice to Charles Wright (of which Gelina apparently received a copy) advising the Debtor that Gelina had been substituted in the GMCVB Action. Interestingly, the letter was not offered into evidence by the Debtor but submitted as an exhibit to Rice's affidavit. Although the letter would seem to indicate that Gelina knew or was made aware of the substitution in the GMCVB Action on February 19, there is no evidence that Gelina had any prior knowledge that the motion was to be pressed on February 13, 1990.

tate over which the Debtor had already sought to exercise its right of dominion. Certainly, since the defendants in the GMCVB Action raised as an issue the relative rights of the Debtor and Gelina in the commissions and since Rice moved to add or substitute Gelina, he knew or should have known that Gelina's addition was adequate to parry the defendants' thrust. In light of the imposition of the identical motion in the Brickell Action, where no challenge had been mounted, *after* the Debtor informed Rice of the stay and its asserted ownership of at least part of the commissions and *after* the Debtor had discharged Rice, I conclude that Rice was acting not only willfully, but without good faith.

The parties are to schedule a hearing respecting the damages to be awarded. Given the prospective application of *Crysen/Montenay's* standards, which were announced after this motion for sanctions had been made and briefed, I decline to award punitive damages.