In re Scott DUNNING, pro se, Debtor.

No. 01–51653.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Oct. 3, 2001.

Scott Raymond Dunning, Akron, OH, pro se.

Kathryn A. Belfance, Akron, OH, trustee.

## ORDER DENYING FIRST MERIT'S MOTION FOR RELIEF FROM JUDGMENT AND MOTION FOR RECONSIDERATION

MARILYN SHEA–STONUM,
Bankruptcy Judge.

This matter came before the Court on August 22, 2001, on First Merit, N.A.'s, (the "Bank's") Motion For Reconsideration or Rehearing Pursuant to Rule 9023 of the Federal Rules of Bankruptcy Procedure, filed July 5, 2001, and the Bank's Motion for Relief from Judgment, also filed on July 5, 2001. The Motions were filed in Response to this Court's Order of June 25, 2001, finding the Bank in violation of the automatic stay pursuant to § 362 of the Bankruptcy Code. This matter arose in a case referred to this Court by the Standing Order of Reference entered in this District on July 16, 1984. The matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334(b).

### I. Issue Presented

Whether the Bank has demonstrated any basis justifying its request that the

Court vacate its Order of June 25, 2001, finding the Bank in willful violation of the automatic stay as a result of its offset of the debtor's bank account on May 4, 2001, two days after his bankruptcy petition was filed, and imposing punitive damages.

## II. Findings of Fact for Purposes of this Order

The following facts were obtained from a review of the file in this case, and from the hearings held on the record on June 13, and June 22, 2001:

1. On May 16, 2001, the debtor filed a Motion which he styled "Motion to Declare: Contempt of Court/Violation of Court Ordered Stay in Federal Bankruptcy Case: 01–51653." The debtor filed both his petition and the Motion *pro se*. The Motion was dated May 10, 2001 and the original as filed with the Court is clearly signed by the debtor. [Docket # 6]. In the Motion the debtor stated, *inter alia*, that the Bank had setoff funds from a post-petition deposit to cover a pre-petition negative account balance.[1]

2. On May 17, 2001, pursuant to this Court's standard policy with respect to what appear to be *ex parte* communications, a letter was sent to the debtor stating that the Court could not act on the Motion as no certificate of service was attached as evidence that other interested parties were apprised of its filing. Letter of Lisa A. Napoli, Law Clerk to Judge Shea–Stonum. [Filed in the main case, but not docketed]. On May 19, 2001, the debtor sent a letter to the Court [docket # 7] informing it that he had sent copies of the Motion to the Trustee and to the Bank through its employees Theresa Jackson and M. Jane Miller.

3. On June 1, 2001, the Clerk's Office sent a notice to the debtor, the trustee, the U.S. Trustee's office, and the Bank, through its above-named employees, notifying the parties that a hearing on the Motion was set for June 13, 2001, at 11:00 a.m. [Docket # 8].

4. On June 5, 2001, the Bank filed its Response to the Motion. In its Response the Bank acknowledged that it had offset the debtor's bank account, but claimed that the offsets had occurred pre-petition "before the Debtor was under the protection of 11 U.S.C. Section 362." Response at 1, ¶ 4.

5. On June 13, 2001, a hearing was held on the matter. Present at the hearing were Cynthia Jeffrey, counsel for the Bank, and the *pro se* debtor. At this hearing it was the debtor's undisputed statement that he had personally gone to the Bank on May 2nd, had spoken to the employees named above and had shown them a copy of his petition.[2] He stated that he asked them to refrain from any further setoffs from his account and their response was to laugh at him.

6. At the hearing, the Bank produced a statement concerning the debtor's account, but it was unclear from the document what transactions had occurred and when they had occurred. The Court ordered the Bank to file supplemental evidence to show what had transpired on the account and on what dates. The Court also set a further

---

**1.** At the August 22nd hearing, reference was made to the source of the negative account balance for the first time. The Bank claims a deficiency balance for an automobile which the debtor had financed with Old Phoenix National Bank of Medina ("Old Phoenix Bank") in 1989 and which had been repossessed in 1991. The Bank became the successor in interest when Old Phoenix Bank merged with it in 1997.

**2.** At the hearing, the Bank did not request that the *pro se* debtor be sworn so he could be cross-examined, and did not dispute his statement.

telephonic hearing to be held on the record on June 22, 2001.[3]

7. On June 18, 2001, the Bank filed its Supplemental Response ("Supp.Res.") to the debtor's Motion. The time line in the Supp.Res. showed that on April 23, 2001, the debtor deposited $540.12, bringing his account balance to $568.21. On that same day, the debtor made an ATM withdrawal of $21.00 and the Supp.Res. notes the Bank "offset" the account in the amount of $547.00, leaving an account balance of $.21. On April 24th and 25th the debtor made two withdrawals totaling $241.50, leaving a negative balance of $271.29 on which the Bank made a $30.00 "overdraft charge." On April 27th the debtor made a deposit of $499.68, against which the Supp.Res. notes an "overdraft" of $301.29, and notes a second "offset" of $198.00, leaving the debtor with an account balance of $.39. On April 27th the debtor made an ATM withdrawal of $180.00, leaving him with an overdraft of $179.61. On May 2nd he filed his petition. On May 4th he made a deposit of $268.28, against which the Bank posted a setoff, although it is not labeled an "offset" in the Supp.Res. as the other entries were in the Supp.Res.

The Bank argued in its Supp.Res. "First Merit made no effort to collect any debt owed to it by the debtor. Deposits into a checking account are applied to any negative balance." Supp.Res. at 3, ¶ 6(h). The Bank also stated that "[a]s a matter of law, the debtor's post-petition deposit into the account, in light of the existing negative balance could only be considered a voluntary payment. No demand or collection activity was undertaken by First Merit to collect the money." Supp.Res. at 4, ¶ 8. This argument ignores the action taken by the debtor on May 2, 2001 to avoid any further setoffs and Bank's own records which evidence the setoff.

8. A telephonic hearing, held on the record with knowledge of the parties, was held on June 22, 2001, in which counsel for the Bank and the debtor participated. The Bank's counsel called no witnesses at either the June 13th or June 22nd hearings. The Bank's counsel chose not to cross-examine the debtor with respect to his representations at either hearing. The June 22nd hearing was scheduled to permit the Bank to clarify its records.

## III. Order of June 25, 2001

The Order of June 25, 2001, is attached to this Order as Appendix A, and is incorporated as if fully re-written herein.[4]

## IV. The Bank's Motions of July 5, 2001

Following the June 25th Order, the Bank filed its Motion for Reconsideration or Rehearing ("Mo. For Reconsid.") and its Motion for Relief from Judgment ("Mo. For Relief"). A hearing on these Motions was held on August 22, 2001.

In its Mo. for Reconsid., the Bank asserted: (1) the Motion is improper because it is not signed[5], (2) that the Motion calls for finding the Bank in Contempt, but that the Court considered the Motion as one

---

**3.** Because the debtor is an over-the-road truck driver and was scheduled to be on the road on the day of the hearing, the Court allowed the parties to participate telephonically at the June 22, 2001 hearing. The debtor had already taken off work to appear at the June 13th hearing, and the Court did not want to require that the debtor lose another day's pay because of the unclear records of the Bank.

**4.** The court notes that the paragraphs in the Order are misnumbered.

**5.** *See, supra,* Findings of Fact for Purposes of this Order at ¶ 1. The Motion filed with the Court was signed and dated by the debtor.

under § 362 and not § 105, (3) that no evidence was presented at the hearings and that the Bank had no opportunity to present evidence by the Bank employees mentioned in the Motion, and (4) that the Court's Order is for equitable relief which is not available under § 362, it requires the Bank to obtain a protective order, and is beyond the power of the Court.

In its 26 page Mo. For Relief, the Bank argues that the judgment should be vacated as void under Fed.R.Civ.P. 60(b)(4). The bank alleges that (1) the sanction imposed by the Court is punitive in nature, which is beyond the court's jurisdiction in an action for contempt, (2) a Motion for Contempt cannot seek to remedy an alleged violation of the automatic stay, (3) contempt is a contested matter that can be raised by Motion, but an alleged violation of the automatic stay is equitable and must be raised by an adversary proceeding, (4) converting a Motion for contempt to an adversary proceeding and ruling without sworn testimony, without notice, and without clear and convincing evidence violates due process, (5) punitive damages are not available for civil contempt and the Court does not have jurisdiction to award punitive damages for contempt, (6) assuming that the Court could proceed on the Motion as a proceeding for finding a violation of the automatic stay, the Court lacked authority to enter a remedial Order unrelated to the Bankruptcy Code, and (7) that the Bank has a meritorious defense in that its post-petition actions concerning the debtor's bank account constitute a recoupment, which is not prohibited by the automatic stay.

The Court notes that none of the legal arguments in the Mo. For Reconsid. were raised at either of the June hearings. The Bank filed its Response and a Supp.Res. to the Motion, and the Bank was represented at each hearing. Again none of the issues now raised in the Mo. For Reconsid. was previously addressed by the Bank. More importantly, those arguments ignore the record facts, as well as additional facts not then in the record which the Bank's counsel knew or should have known at the time of the preparation of that motion made its arguments even less tenable, and the applicable law.

In addition, all of the claims in the Mo. For Relief concerning the treatment of the Motion as one requiring hearings concerned with civil contempt are raised for the first time. At both June hearings, the Bank addressed the Motion as one alleging violation of the automatic stay, and not a Motion for Contempt. In addition, the defense raised in the Mo. For Relief, that the Bank's actions were a recoupment and not a setoff, was not raised in the Response or Supp.Res. or at the hearings.

## A. Punitive Damages pursuant to § 362.

■ First Merit alleges that punitive damages are not "available as a remedy for Civil Contempt of Court nor does the Bankruptcy Court have Jurisdiction to Award Punitive Damages for Contempt." Mo. For Relief at 14. The hearings held were not on the issue of contempt, but on the issue of a post-petition offset of a pre-petition, unsecured debt constituting a violation of the automatic stay. That the Court has the power to impose actual damages and punitive damages is clear from the Code itself. Section 362(h) states

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

A willful violation of the automatic stay does not require specific intent. *In re Sharon*, 234 B.R. 676, 687 (6th Cir. BAP

1999); *see also In re Robinson*, 228 B.R. 75, 79 n. 5 (Bankr.E.D.N.Y.1998) ("If section 362(h) were limited to violators who had specific intent to violate the stay, the deterrent effect of the damages remedy, and the relief it affords wronged debtors, would be compromised inappropriately."); *In re Hill*, 222 B.R. 119, 123 (Bankr. N.D.Ohio 1998). "A violation of the automatic stay can be willful when the creditor knew of the stay and violated the stay by an intentional act." *In re Sharon* at 687; *see also Johnston Environmental Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 618 (9th Cir.1993).

The Code contemplates that punitive damages may be imposed for a violation of the automatic stay, and courts have set various standards. Some courts limit the award of punitive damages to situations where the creditor acts with actual knowledge or with reckless disregard that it was violating the automatic stay. See e.g., *Griffin v. Sears, Roebuck and Co. (In re Griffin)*, 204 B.R. 308 (Bankr.D.R.I.1997). In this case the Bank acted with actual knowledge.

In *In re Chateaugay Corp.*, 920 F.2d 183, 186 n. 1 (2nd Cir.1990), the court permitted an award of punitive damages under § 362(h) after an additional finding of maliciousness or bad faith by the creditor. "Another line of cases has concluded that punitive damages are appropriate where an arrogant defiance of federal law is demonstrated." *In re Novak*, 223 B.R. 363, 368 (Bankr.M.D.Fla.1997) (awarding $20,000 in punitive damages for offset of the debtor's bank account as a matter of the bank's corporate policy). "If the bank-

ruptcy court believes that the amount of such actual damages is insufficient to deter the kind of deliberate and repeated violations of the automatic stay which evident in this case, the bankruptcy court is free to impose an appropriate amount of punitive damages." *Archer v. Macomb Cty. Bank*, 853 F.2d 497, 500 (6th Cir.1988).

In this case the Court imposed punitive damages in the amount of $3,000, $2,250 of which might be purged if the Bank chose to demonstrate to the Court that it was examining how the violation occurred and how to avoid similar future violations. If the Bank chose not to purge itself by looking into its policies and procedures related to bankruptcy filings by its customers, and filing the same with the Court for review, then the damage award would stand as ordered. The purpose for the inducement to examine policies and procedures and filing same with the Court, was for the Bank to avoid future violations of the automatic stay, and for counsel to help the Bank understand the requirements of the Code.[6]

In *In re Novak*, the court stated that part of the reason for the punitive damage award was that

> the injury to the Debtor was predicated upon calculated corporate policy. It was [the Bank's] corporate policy to treat debts similar to the Debtor's as nondischargeable even with full knowledge and comprehension of the implication and ramifications of a discharge in bankruptcy. This intentional corporate policy is in direct violation of the letter and the spirit of the Bankruptcy Code.

---

**6.** The Bank also states that the Court's continuing jurisdiction over the Bank's policies and procedures to conduct further hearings "relative to the same" is an abuse of the Court's power, as are the provisions of ¶¶ 1 and 2 of the Order This argument is not ripe since no such hearings have taken place, no

outside counsel has reviewed the policies and Bank has not been caused to report on any provisions it intends to undertake to avoid violation of section 362. The matter now before the Court is a result of the Bank's motions.

[The Bank] is a knowledgeable financial institution and should be attuned to the responsibilities owed to debtors.

. .

*Id.* at 368.

In this case the Bank stated repeatedly at the hearings and in its pleadings that "[d]eposits into a checking account are applied to any negative balance as a matter of course." The Court pointed out in its June 25th Order the implications of this language: that the Bank does not discriminate between customers known to be in bankruptcy and customers who have not sought bankruptcy protection. By its statement the Bank implied that it setoff negative balances with future deposits "as a matter of course," which could be construed as "corporate policy," whether the client had filed for bankruptcy protection or not. The Bank was permitted to purge most of the punitive damages if it could show the Court that this was not the case. It chose not to.

 The Bank further claims that the Court's Order is unprecedented in that it requires the Bank to file with the Court its policies and procedures regarding bankruptcy filings. In *In re McCormack*, 203 B.R. 521, 525 (Bankr.D.N.H.1996), the Court fined Chase Manhattan Mortgage Corp. $10,000 for "failing to set up appropriate computer or specialized accounting procedures with appropriate instructions to employees to avoid violations of the automatic stay . . . ." *See also In re Novak*, *supra*, (awarding $20,000 in punitive damages based partly on the Bank's corporate policies and procedures).[7] This Court has taken a different approach.

The Bank and its several counsel should be aware that the Code allows for punitive damages when the automatic stay is violated. There is no need to consider what, if any, power the Court might have exercised under § 105 because the June 25th Order is solely an application of § 362(h). The intent of § 362 is to protect debtors post-petition from creditors seeking payment of pre-petition debts. This Court is the place to which debtors must come in order to have this protection upheld. This Court is the one most directly involved with provisions of the Code and their effects on creditors and debtors. The intent of the Court is to encourage financial institutions and other creditors to recognize the need to be informed as to appropriate handling of the accounts of bankruptcy filers and actually be aware of the Code restrictions on handling those accounts. For the Court to encourage creditors to look at their policies and procedures regarding bankruptcy and to provide the opportunity to demonstrate that a willful violation of the automatic stay is nonetheless aberrational in light of its existing policies, is not an abuse of the Court's powers under § 362(h). Section 105 is not part of this analysis.

## B. Purpose of the Order Awarding Punitive Damages and Allowing The Bank to Purge a Portion of Such Damages Following Violation of the Automatic Stay Pursuant to § 362(a).

It is plain that in a situation such as this, the Court is authorized to award punitive damages. In this Court's view, the primary purpose of punitive damages is to modify the future behavior of parties found to have violated the stay. I am of the view that developing an understanding of why the violation occurred is likely to result in

7. The Bank had the right to present evidence at either hearing, or to show in any pleading, that it was aware of the automatic stay and took precautions not to be in violation of the Code. It presented no such evidence. And the record evidence was certainly to the contrary.

more appropriate behavior in the future. Parties who are willing to undertake such self-examination should not be punished to the same degree as parties who demonstrate no willingness or ability to understand why their procedures can lead to violations of the automatic stay. The most important reason for the Court's allowing purging of a portion of the punitive damages upon the examination of procedures and policies by financial institutions that have been found to have wilfully violated § 362(a) is for them to confer with counsel who can help them understand the workings of the Code with which they will be required to comply, such as the automatic stay and the post-discharge injunction. Allowing a financial institution to purge most of its punitive damages if it examines in good faith its policies and procedures with an openness to making appropriate changes serves the intended purposes of avoiding mistakes in the future, encouraging compliance with the Code and protecting both the entity and other debtors. One hopes that this educational, rather than punitive, option serves the best interest of the financial institutions, their counsel, other creditors and debtors by advancing a working understanding of the Code and its effects. This Court seeks to foster compliance with the Code and has no wish to continue to encounter the same financial institutions in the courtroom because of future violations of the Code. In this case, such analysis was not undertaken and such understanding apparently was not advanced.

In both Motions filed by the Bank the following identical statements are made:

First Merit made no effort to collect any debt owed to it by the Debtor. Deposits into a checking account are applied to any negative balance as a matter of course.

Mo. For Reconsder. at 3–4; Mo. For Relief at 5. This language is similar to that in the Supp.Res. at ¶ 6(h), Appendix A, ¶ 7. As the Court pointed out in its June 25th Order, "such statements may indicate that First Merit is unaware of the provisions of the Bankruptcy Code, and § 362(a) in particular." Order at 6. Given the finding of this Court in its June 25th Order that "First Merit willfully violated the automatic stay set forth in § 362(a)," which finding was based primarily on the Bank's own documentary evidence and the Supreme Court's ruling in *Strumpf,* for the Bank and its counsel to continue to declare that it did nothing to collect a pre-petition debt, and did not violate the stay, is of serious concern to this Court.

In its Motions the Bank makes no claim that it did not setoff the account, and the Bank does not refute the finding of this Court that the setoff violated the automatic stay. Its continued refrain that it "made no effort to collect any debt" simply belies the facts.

■ The Bank asserts that the option it was given to purge three-quarters of the punitive damage award was in reality a requirement that it undertake the actions identified as prerequisites to such purging. The Bank thus asserts in its Mo. For Reconsid., with no identification of any facts supporting such assertion, that the Court's Order requires the Bank to obtain a protective order to insure that its policies and practices are protected "in that some of the information contained in the records may be subject to the attorney-client privilege." Mo. For Reconsid. at 8. The Order simply did not require that the Bank present its policies and procedures to the Court, but only permitted such a course of action if the Bank chose to avail itself of an opportunity to purge a considerable portion of the punitive damages. At the August 22, 2001, hearing the Bank

stated that it was being forced by the Court to reveal its policies and procedures regarding bankruptcy filings which it considers proprietary. This statement ignores the options open to the Bank. It could have sought to file such "proprietary" information under seal, or pursuant to the plain language of the Order, it could choose not to avail itself of the option to purge portions of the damages. The Bank plainly knew that it was free not to adopt the damage mitigation opportunity, because it did not do so. The Bank has not purged those portions of the damages, nor has it been required to file any policies or procedures which it might view as cloaked in attorney-client privilege or being proprietary in nature.

## C. Due Process

In both of its Motions the Bank argues that it has been denied due process. Ignoring the very record on which it seeks reconsideration, the Bank alleges that no evidence was presented at the hearings and that the Bank had no opportunity to present evidence by the Bank employees named in the Motion. In its Mo. For Relief, the Bank alleges that the Court converted a Motion for Contempt to an adversary proceeding and ruled without sworn testimony, without notice and without clear and convincing evidence, all in violation of its due process rights. In addition, the Bank alleges that the Court rendered its judgment without requiring the debtor to meet his burden of proof. In an effort to promote an understanding of automatic stay matters that the Bank and its counsel should have developed prior to the filing of the instant Motions, the Court will examine the hollowness of each of these assertions.

Prior to the Bank's Motions there were two hearings in this case. The notice of the first hearing was sent by the Court on June 3, 2001, to the debtor, the trustee, the office of the U.S. Trustee and to Theresa Jackson, First Merit Bank Bankruptcy Division, 3 Cascade Plaza, Akron, Ohio, and M. Jane Miller, First Merit Kenmore Branch, 1060 Kenmore Blvd., Akron, Ohio. On June 5, 2001, the Bank filed its Response to the Motion, stating that "[b]oth of the bank offsets occurred prepetition, before the Debtor was under the protection of 11 U.S.C. § 362." Response at ¶ 4. The Bank itself obviously understood, even prior to the June 13th hearing, that the *pro se* Debtor's "Motion for Contempt of Court/Violation of Court Ordered Stay" was a motion for violation of § 362.

The first hearing was held on June 13, 2001, and the Bank was ably represented by counsel. No witnesses for the Bank were present, nor did the Bank request that any witnesses be sworn or any testimony be taken, including swearing of the *pro se* debtor for cross-examination. At that hearing, the documentary evidence presented by the Bank was unclear and a second hearing was scheduled to allow the Bank to file clearer documentary evidence regarding the debtor's account. The second hearing was scheduled on the record during the first hearing. At the June 22, 2001 hearing, the Bank again was represented by counsel and did not present any witnesses or request that any witness be sworn or any testimony be taken. The Bank relied on the evidence it presented in its Supp.Res. filed on June 18, 2001. From the evidence the Bank presented, it was clear to the Court that a setoff had occurred post-petition. The Bank's own records show the posting of the setoff transaction on May 4, 2001. Coupled with the debtor's undisputed representations concerning his personal communication with bank employees at his branch on May 4, 2001, no clearer evidence was necessary to demonstrate that a violation of § 362 had occurred.

The Bank chose to call no witnesses at either of the hearings, even though the two named employees had been served with the June 3, 2001 notice from the Court. The Bank did not state at any time that testimony would be either necessary or useful in this matter. In addition, the Bank never requested that the debtor, or any other witness, be sworn and give testimony at either hearing. The Bank was free to call its witnesses and chose not to do so.

The Bank's allegation that the Court deprived them of their due process right to have an adequate opportunity to be heard and to present evidence could not be further from the actual proceedings in this case. The fact that one of the motions now under consideration was signed by a lawyer in the same firm as the Bank's counsel who appeared at both June hearings begs inquiry under Fed.R.Bankr.P. 9011.[8]

The Bank was represented by counsel at both June hearings. Such counsel never argued that the Bankruptcy Code or Rules require an adversary proceeding for Violation of the Automatic Stay. And for good reason: there is no such requirement. Fed.R.Bankr.P. 7001 sets forth, in relevant part:

> The following are adversary proceedings: (1) a proceeding to recover money or property ... (2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property ... (3) a proceeding to obtain approval under § 363(h) for the sale of both the interest of the estate and of a co-owner in property; (4) a proceeding to object to or revoke a discharge; (5) a proceeding to revoke an order of confirmation of a chapter 11, chapter 12, or chapter 13 plan; (6) a proceeding to determine the dischargeability of a debt; (7) a proceeding to obtain an injunction or other equitable relief ... (8) a proceeding to subordinate any allowed claim or interest ... (9) a proceeding to obtain a declaratory judgment relating to any of the foregoing; or (10) a proceeding to determine a claim or cause of action removed under 28 U.S.C. § 1452.

The Bank now characterizes the relief requested by the debtor in his Motion as that for money damages. In addition, the Bank states that "proceedings to remedy a violation of the automatic stay are equitable proceedings, seeking damages to (*sic*) the Debtor's property or property of the estate ... and must be maintained as an adversary proceeding." Mo. For Relief at 11. However, what the debtor sought was that the Bank be required to comply with the Code. In addition, the debtor sought a declaration that the stay was violated, and if successful in obtaining the declaration, damages which are clearly permitted pursuant to § 362(h). "Actions taken in violation of the stay are invalid and voidable and shall be voided absent limited equitable circumstances." *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir.1993), *see also In re Soares*, 107 F.3d 969 (1st Cir.1997). The debtor did not seek recovery of money or property; he sought that the actions of the Bank be voided. A request for avoidance of an entity's actions under § 362, and a request for sanctions under § 362(h), are not among the ten proceedings enumerated in Rule 7001. "[I]mposition of sanctions under § 362(h) may be sought by motion rather than complaint." *In re Hooker*, 116 B.R. 375, 378 (Bankr.S.D.N.Y. 1990), quoting *Fortune & Faal v. Zum-*

---

**8.** In addition, the official tape recordings of both proceedings were available for review in the Clerk's Office.

brun (In re Zumbrun), 88 B.R. 250 (9th Cir. BAP 1988). *See also Karsh Travel, Inc. v. Airlines Reporting Corp. (In re Karsh Travel, Inc.)*, 102 B.R. 778 (N.D.Cal.1989); *In re Depew*, 51 B.R. 1010 (Bankr.E.D.Tenn.1985); *Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289 (4th Cir.1986).

■ In addition, the Bank raised no objection to proceeding on the Motion rather than on a complaint, "thereby waiving any procedural irregularity." *In re Elegant Concepts, Ltd.*, 67 B.R. 914, 917 (Bankr. E.D.N.Y.1986). In addition

> The applicability of Bankruptcy Rule 9014 to any contested matter brought on by motion, as well as the two hearings this court has held in this matter, have accorded respondents the same substantive rights they would have enjoyed had the debtor brought their contempt before the Court by complaint rather than by motion.

*Id.* The *Zumbrun* and *Hooker* courts also recognize that the due process safeguards contained in a motion brought in a contested matter under Bankruptcy Rule 9014 are no different from those in an adversary proceeding. *Zumbrun* at 252–53; *Hooker* at 378.

On this record, the Bank's claims that the Court violated its due process rights because (1) the Court converted a Motion for Contempt to an Adversary Proceeding, (2) the Bank had no notice of the hearings, (3) the evidence was less than clear and convincing, (4) the Bank had no opportunity to present its witnesses, and (5) the absence of sworn testimony disables the Court from making findings on the documentary evidence, is simply wrong.

The Bank further alleges that the debtor did not meet his burden of proof in order to justify a finding of a violation of the automatic stay. Again, this is simply not so. The debtor obviously was the *pro se* individual who filed the petition, and he stated that the Bank received actual notice of his filing because he took it to the Bank and showed it to the two named individuals who were employed by the Bank. The Bank did not dispute his statement.

■ "Once the creditor receives actual notice, the burden shifts to the creditor to prevent violations of the automatic stay." *Mitchell Constr. Co., Inc. v. Smith (In re Smith)*, 180 B.R. 311, 319 (Bankr. S.D.Ga.1995). The Bank states "[e]stablishing a violation of the automatic stay along with a right of recovery remains the Debtor's burden of proof." Mo. For Relief at 24. In this case, there is no doubt that the debtor met his burden of proof, and that the burden shifted to the Bank to show it did not violate the automatic stay. The Bank was unable to so show.

## D. Court and both parties deemed the Motion to be one for Violation of the Automatic Stay, § 362

In its Motions the Bank raises, again for the first time, the issue that the debtor filed a Motion for Contempt and the Court should have considered the Motion under the standard for § 105, and not § 362. This notwithstanding that the Bank's Response to the Motion references § 362, and, by its own language, makes clear its recognition that its setoffs would be in violation of the automatic stay if they were post-petition. In addition, at no time during the proceedings did the Bank raise the issue of the use of § 105, and in both hearings the parties clearly focused on § 362. Moreover, the Court's June 25th Order is based solely on § 362(a) and (h).

Even if the Bank had not referenced § 362 in its Response, Fed.R.Civ.P. 8(f) states that "[a]ll pleadings shall be so construed as to do justice." As the Sixth Circuit has held

the fundamental tenor of the Rules is one of liberality rather than technicality, and it creates an important context within which we decide cases under the modern Federal Rules of Civil Procedure. *Miller v. American Heavy Lift Shipping*, 231 F.3d 242, 248 (6th Cir.2000). In addition the Sixth Circuit has also held that "the label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states." *Minger v. Green*, 239 F.3d 793, 799 (6th Cir.2001), quoting, *United States v. Louisville & Nashville R. Co.*, 221 F.2d, 698, 701 (6th Cir.1955). The Supreme Court has held that *pro se* pleadings are to be "liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Court deemed the Motion to be a Motion for Violation of § 362, as did the Bank's counsel. *See* Findings of Fact for Purposes of this Order at 4. From the outset, the Bank was prepared to, and did, address the debtor's Motion as one pursuant to § 362. To attempt at this juncture to re-characterize a motion that both parties and the Court construed as one for violation of § 362 ignores the record in this case.

### E. Recoupment v. Setoff

The Bank states in its Mo. For Relief that

> Despite characterizing the post-petition transaction between First Merit and the Debtor as a setoff under 11 U.S.C. § 553,[9] made in violation of the automatic stay, it is more aptly characterized as a recoupment, which is not prohibited by the automatic stay.

Mo. For Relief at 24. This claim is also being made for the first time.

To establish a recoupment situation, the Bank concedes that it would have to establish that its actions arose "out of the same transaction as that of the Debtor's claim." *Id.* Having invoked the recoupment doctrine in its pleadings the Bank did not explain what that "same transaction" was or why it may be entitled to this defense.

■ Recoupment is the setting up of a demand, arising from the same transaction as the plaintiff's claim, to abate or reduce that claim. Samuel R. Maizel, *Setoff and Recoupment in Bankruptcy*, 820 PLI 279, 300 (2001). Recoupment has also been defined to mean:

> A right of the defendant to have a reduction from the amount of the plaintiff's damages, for the reason that the plaintiff has not complied with the cross-obligations or independent covenants arising under the same contract. It implies that plaintiff has cause of action, but asserts that defendant has counter cause of action growing out of breach of some other part of same contract on which plaintiff's action is founded, or for some cause connected with contract.

Black's Law Dictionary 1275 (6th ed.1990).

In *United Structures of Amer. v. G.R.G. Eng'g*, 9 F.3d 996 (1st Cir.1993), the court stated that recoupment is " 'in the nature of a defense' and is intended to 'permit . . . judgment to be rendered that does justice in view of the one transaction as a whole' . . . allowing the creditor to recoup damages simply allows the debtor precisely

---

9. Again the actual record seems of no interest to movant's counsel. The setoff was not, previous to this Motion, ever characterized as one pursuant to § 553, and it is clear from the evidence at the hearings and in the pleadings that there was no mutual, pre-petition debt as required by that section. Even if there had been a mutual, pre-petition debt, setoff is stayed by § 362(a)(7), requiring a party to seek court permission before exercising the setoff right. *DuVoisin v. Foster (In re Southern Industrial Banking Corp.)*, 809 F.2d 329, 332 (6th Cir.1987).

what is due when viewing the transaction 'as a whole.'" *Id.* at 999, quoting *Rothensies v. Elec. Storage Battery Co.,* 329 U.S. 296, 299, 67 S.Ct. 271, 91 L.Ed. 296 (1946).

The parameters of recoupment are derived from common law pleading rules concerning counterclaims. *Coplay Cement Co. v. Willis & Paul Group,* 983 F.2d 1435, 1440 (7th Cir.1993) (recoupment is the "ancestor" of the compulsory counterclaim presently set forth in Fed.R.Civ.P. 13). Most courts take a restrictive view of "transaction," usually requiring a single contract or even a single transaction under a contract. *In re McMahon,* 129 F.3d 93 (2nd Cir.1997) ("In light of the Bankruptcy Code's strong policy favoring equal treatment of creditors and bankruptcy court supervision of even secured creditors, the recoupment doctrine is a limited one and should be narrowly construed."). In *In re St. Francis Physician Network, Inc.,* 213 B.R. 710, 719–20 (Bankr.N.D.Ill.1997), the court stated

> Satisfaction of the "same transaction" test, therefore, requires that there be such a close, necessary relationship between the events that gave rise to the debtor's post-petition claim and the events that gave rise to the creditor's pre-petition claim that the amount of the former cannot fairly be determined without accounting for the latter.... When the two claims arise from different parts of a contract, dealing with different performance obligations, recoupment comes closer to a prohibited cure of pre-petition defaults with post-petition assets....

■ Recoupment simply has not been proven to be applicable to this case. Based upon facts adduced for the first time at the August 22nd hearing, recoup-

ment does not appear to be even remotely arguable. The setoffs posted occurred because of a loan for an automobile for $2,674.01, at 15% interest, made to the debtor by Old Phoenix Bank in November, 1989. The debtor defaulted on the loan and the vehicle was repossessed in 1991. The vehicle was sold, leaving a deficiency balance of $1,362.26, on which interest continued to accrue. In 1997 the Bank became the successor in interest by reason of merger with Old Phoenix Bank. The balance on the deficiency claim at the time of the debtor's filing was $2,545.77, and the Bank was listed on the debtor's schedules as holding an unsecured claim for that amount. It was against this deficiency balance from 1991 that the Bank was posting setoffs against the debtor's account.[10]

The record indicates that the Bank posted setoffs against the account on April 23, 2001 and April 27, 2001. At the time of his filing, the debtor's account showed a negative balance of $179.61 pre-petition, due to the Bank's April 27th setoff and the fact that on that same day the debtor withdrew $180.00 from an ATM, having no knowledge that the setoff had occurred. On May 4, 2001, post-petition, the debtor deposited funds in the account and the Bank reduced the account balance by the amount it was owed. The setoffs were the result of a debt from 1991, based on the Bank's merger with another bank which was the loan originator. This is a far cry from the requirements of recoupment. There is no single transaction here. The Bank cannot assert that it had a "contract" with the debtor pursuant to which recoupment could be a defense. The Bank simply set itself ahead of other creditors and setoff a pre-petition debt with post-petition assets, in violation of the Code. .

10. It is beyond the scope of matters now before this Court to address the appropriate-

ness of these procedures of the Bank.

■ The Bank also states it "took no affirmative steps or actions whatsoever to perform a setoff." Mo. For Relief at 25. Pursuant to the Supreme Court's holding in *Strumpf,* a setoff occurs when (i) a decision to effectuate a setoff is made; (ii) action is taken to accomplish the setoff, and (iii) the setoff is recorded. *Strumpf* at 19, 116 S.Ct. 286. Recording of the setoff entails reducing the account balance by the amount owed to the bank. *Id.* The Bank took these steps and effectuated the setoff by reducing the account balance and recording the setoff.[11]

### F. Motion for Reconsideration and Fed.R.Bankr.P. 9023

■ Fed.R.Bankr.P. 9023 and Fed. R.Civ.P. 59(c) govern motions to alter or amend judgments. *In re Oak Brook Apts. Of Henrico Cty., Ltd.,* 126 B.R. 535, 536 (Bankr.S.D.Ohio 1991). Motions filed under these rules are characterized as motions for reconsideration and are within the discretion of the trial court to grant or deny. *Id.,* citing *Huff v. Metropolitan Life Ins. Co.,* 675 F.2d 119 (6th Cir.1982). "Such motions are appropriate only to correct 'manifest errors of fact or law' or to present newly discovered evidence." *Oak Brook* at 536.

On the record of this case, the Court finds no "manifest errors of fact or law" and the Bank has presented no "newly discovered evidence" that remotely supports the Bank's Motion. Accordingly, the Motion for Reconsideration or Rehearing is DENIED.

### G. Motion for Relief from Judgment and Fed.R.Bankr.P. 9024

The Bank argues in its Motion for Relief from Judgment that pursuant to Rule 60(b)(4) and (b)(6), respectively, the judgment is void and there is reason to justify relief from the operation of the judgment. Fed.R.Civ.P. 60(b) is made applicable in bankruptcy proceedings under Fed. R.Bankr.P. 9024 and states, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party ... from final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void ..., or (6) any other reason justifying relief from the operation of judgment.

On the record in this case, the Court does not conclude that the judgment is void and sees no justification for relief from the operation of the judgment. Accordingly, the Bank's Motion for Relief from Judgment is DENIED.

### H. Fed.R.Bankr.P. 9011

At least one question remains: How could counsel from the same firm as the Bank's lawyer who appeared at both June hearings have made the factual assertions and legal arguments that the examination in this decision has shown to be so baseless? In short, the Court is concerned about such counsel's apparent disregard for Fed.R.Bankr.P. 9011. Obviously this matter already has claimed a large amount of the Court's time. If possible, the Court desires to avoid any additional hearings. In the interest of judicial efficiency, the Court will require evidence that counsel of record have delivered this opinion to the Bank's general counsel and the highest ranking bank officers with direct supervisory authority for consumer lending, consumer deposit accounts and collection of delinquent accounts, and that those offi-

---

**11.** Incredibly, Bank's counsel states that "[i]f [it] had frozen ... the Debtor's account ... this could have been construed as ... violative of the automatic stay." Mo. For Relief at

**25.** However, it views the actual act of setoff as somehow being outside the scope of the automatic stay.

cers have read the opinion in its entirety. Such evidence shall be filed with the Court in the form of an affidavit from each such bank officer by not later than **October 23, 2001.**[12] If counsel believes that the Court's conclusions regarding Rule 9011 are incorrect, counsel may show cause why the Court has misperceived such matter at a hearing to be held on **October 11, 2001 at 9:30 a.m.** Should counsel desire to be heard on that date, by not later than **October 9, 2001 at 4:00 p.m.,** they are to file a brief outlining each argument that they will seek to raise at that hearing.

### V. Conclusion

For the foregoing reasons, the Bank's Motion for Reconsideration or Rehearing Pursuant to Rule 9023 of the Federal Rules of Bankruptcy Procedure and the Bank's Motion for Relief from Judgment are DENIED. The Court's Order of June 25, 2001, stands as written. Accordingly, within eleven (11) days of the entry of this Order, the Bank shall forthwith pay over to the debtor, by certified check, the sum of $3,000 as ordered by the Court.

### EXHIBIT A

### ORDER IMPOSING SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY

This matter came on for hearing on June 13, 2001, on Debtor's motion, filed May 16, 2001, to find First Merit Bank ("First Merit") in contempt for violation of the automatic stay (the "Motion"). The debtor stated in the Motion that, *inter alia,* First Merit had setoff funds from a post-petition deposit to cover a pre-petition negative account balance. Appearing at the hearing were Scott Dunning, *pro se,* and Cynthia Jeffrey, counsel for First Merit.

At the hearing, counsel for First Merit stated that although it had offset the debtor's account, it had accomplished the offsets pre-petition and had stopped offsetting the account when the petition was filed. The debtor stated that he had personally gone to First Merit on May 2, 2001, with a copy of his petition and had informed M. Jane Miller, Kenmore Branch manager, and Theresa Jackson, also of First Merit, of the filing.[1] From the First Merit bank statement concerning the debtor's account, produced during the hearing, it was unclear what transactions had occurred and when. The Court ordered First Merit to file supplemental evidence to show what had transpired on the account and set a further hearing for June 22, 2001. First Merit filed its Supplemental Response on June 18, 2001, and a telephonic hearing was held on June 22, 2001.

---

12. Unlike the June 25 Order, the requirement that the Court receive evidence that the appropriate Bank officers are aware of the matters addressed in this opinion is not optional. Failure to comply with this aspect of the Order will result in this Court scheduling a hearing pursuant to Fed.R.Bankr.P. 9011 at which both counsel and the relevant Bank officers will be required to appear.

1. At the June 22, 2001, hearing the issue of insufficiency of service of the Motion was raised for the first time. Both Ms. Miller and Ms. Jackson were served with the Motion by Certified Mail, Ms. Jackson on May 12, 2001, and Ms. Miller on May 14, 2001. Ms. Jeffrey stated on June 22, 2001 that service was insufficient under Fed.R.Bankr.P. 7004(h) because these individuals are not officers of First Merit as required under the rule. The Court finds that this issue was not timely raised and that therefore the issue of insufficiency of service, if any, was waived. In addition, no evidence was on the record as to the positions these individuals held at First Merit and that they would not qualify as "officers" within the meaning of "officer, a managing or general agent, or . . . any other agent" as stated in Rule 7004(h).

This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this District on July 16, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334(b).

## I. Issue Presented

Whether the application by First Merit of the debtor's May 4 deposit to eliminate a negative balance in the debtor's checking account as of the filing date constitutes a willful violation of the automatic stay under 11 U.S.C. § 362(a)(6) or (a)(7).

## II. Findings of Fact

In accordance with Bankruptcy Rule 7052, the Court makes the following findings of fact:

1. Debtor filed a petition for relief under chapter 7 on May 2, 2001. First Merit is listed as an unsecured creditor holding a nonpriority claim of $2,742.76.

2. On May 2, 2001, First Merit was informed of the filing by the debtor who showed a copy of his file-stamped petition to individuals at First Merit, M. Jane Miller and Theresa Jackson.

3. On June 18, 2001, First Merit filed a Supplemental Response which indicated that as of the day of the filing the debtor's bank account showed a negative balance of $179.61.

4. On May 4, 2001, as shown on unnumbered page 3 of the Supplemental Response, the debtor made a post-petition deposit of $268.28. On the same day First Merit deducted the negative balance of $179.61 from the debtor's account, leaving a balance of $88.67.

5. First Merit argues in its Supplemental Response, at unnumbered page 4, that "[a]s a matter of law, the debtor's post-petition deposit into the account, in light of the existing negative balance could only be considered a voluntary payment. No demand or collection activity was undertaken by First Merit to collect the money." This ignores the fact that the debtor had no such "voluntary intent" or he would not have shown the First Merit employees his petition. It further ignores the activity of First Merit in the posting of the May 4 deposit in a manner, that, if left unaddressed, would satisfy the pre-petition debt as represented by the negative account balance.

That application of the deposit constituted collection activity by First Merit at a time when the First Merit employees causing such application had actual knowledge of the debtor's bankruptcy petition.

## III. Conclusions of Law

The automatic stay becomes effective at the moment a debtor's bankruptcy petition is filed. 11 U.S.C. § 362(a). Once effective, the automatic stay applies to "all entities" and to "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6). Unless otherwise ordered by the bankruptcy court, the protection afforded by the automatic stay continues until a discharge is granted or denied. 11 U.S.C. § 362(c). Pursuant to § 362(h), a person shall recover actual damages, including costs and attorney fees, and, in some circumstances, punitive damages, when that person is injured by a "willful" violation of the automatic stay.[2] The term "willful," while not defined in the

2. Section 362(h) states that:
[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages. 11 U.S.C. § 362(h).

Bankruptcy Code, has been interpreted to mean simply acting intentionally and deliberately while knowing of a pending bankruptcy. *See, e.g., Cuffee v. Atlantic Business & Community Dev. Corp. (In re Atlantic Business & Community Dev. Corp.),* 901 F.2d 325, 329 (3rd Cir.1990); *Knaus v. Concordia Lumber Co., Inc. (In re Knaus),* 889 F.2d 773, 775 (8th Cir. 1989); *In re Bloom,* 875 F.2d 224, 227 (9th Cir.1989). There is no evidence to rebut the debtor's contention that a copy of the petition was actually shown to First Merit personnel at the Kenmore branch and an Akron office, and First Merit's own evidence indicates that it offset the debtor's account May 4, 2001, from the debtor's post-petition deposit, to pay a pre-petition debt.

Section 362(a)(7) states that the petition operates as a stay of "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." The setoff right as it pertains to pre-petition cross-claims is preserved in bankruptcy. 11 U.S.C. § 553. It is the act of setting off the debt that is prohibited by the automatic stay. The Supreme Court in *Bank of Maryland v. Strumpf,* 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995) held that a setoff occurs when (i) a decision to effectuate a setoff is made; (ii) action is taken to accomplish the setoff; and (iii) the setoff is recorded. *Id.* at 19, 116 S.Ct. 286. Recording of the setoff entails reducing the account balance by the amount owed to the bank. *Id.* The Court also held that "[i]t is undisputed that under § 362(a)(7) respondent's bankruptcy filing stayed any exercise of that right [of setoff] by petitioner." *Id.* Pursuant to *Strumpf,* First Merit could have frozen the account without violating the automatic stay which would have preserved the negative account balance. It chose instead to setoff a post-petition deposit to the account. This exceeds anything considered in *Strumpf.*

In *In re Pieri,* 86 B.R. 208, 210 (9th Cir. BAP 1988) the court held that "setoffs are stayed pending determination by the bankruptcy court that a setoff is proper and should be allowed. While setoffs are generally favored they are not automatically permitted." First Merit did not request relief from stay from the Court or use other means to avoid violation of the automatic stay. Moreover, the setoff allowed by the Bankruptcy code is only allowed "to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case...." 11 U.S.C. § 553(a). Setoff of pre-petition claims against post-petition property of the debtor is not permitted. 11 U.S.C. § 362(a)(6).

The Court finds that First Merit willfully violated the automatic stay set forth in § 362(a).

When pre-petition creditors ignore § 362 of the Bankruptcy Code, punitive damages are often appropriate. Damage awards under § 362(h) have as their primary function deterrence of a pattern of behavior that ignores the automatic stay. In the past, this Court has been inclined to minimize the assessment of punitive damages when a holder of a pre-petition claim could produce evidence of a corporate policy and practice of abiding the automatic stay. *See In re Riddick,* 231 B.R. 265, 269 (Bankr.N.D.Ohio 1999). This Court continues to believe that enforcement of the automatic stay should be focused primarily on encouraging future compliance. In the current matter, First Merit simply ignored its notice of the debtor's filing and setoff the bank account, stating, however, that it considered the deposit a "voluntary payment" and that "no demand or collection

activity was undertaken by First Merit to collect the money." Supplemental Response at unnumbered page 4. Such actions indicate that punitive damages are in order, and such statements may indicate that First Merit is unaware of the provisions of the Bankruptcy Code, and § 362(a) in particular.

**THEREFORE, IT IS HEREBY ORDERED:**

1. That First Merit shall gather existing, written policies and procedures in effect as of May 2, 2001, with respect to dealing with the pendency of an account debtor's bankruptcy and avoiding violation of the automatic stay. First Merit shall consult with independent, outside counsel (who may be counsel of record in this matter, but also may be different counsel) to review these policies to determine if they are consistent with the provisions of § 362.

2. That by no later than *July 20, 2001* First Merit's outside counsel shall file a report with the Court analyzing whether this matter was or was not treated in accordance with the policies and procedures referenced above. That analysis shall also consider what training is provided to First Merit personnel regarding bankruptcy in general and the automatic stay in particular. First Merit shall further report on any remedial provisions it intends to undertake to avoid violation of the automatic stay in circumstances such as this in the future.

4. That by no later than *June 27, 2001,* First Merit shall reinstate the setoff amount of $179.61 to the account of the debtor. In addition, First Merit is to pay through a direct deposit to debtor's account $750.00 of the $3,000 referenced in paragraph 5 below by no later than *June 27, 2001.*

5. That because the violation is found to be a willful one, the debtor is provi-sionally awarded punitive damages in the amount of $3,000. First Merit may purge itself of $2,250 of the $3,000 in punitive damages, if, after compliance with this Order, the Court concludes that the treatment of the debtor's account can be shown to be an anomaly in light of procedures in place as of May 2, 2001, as reviewed by outside counsel and as filed with and reviewed by the Court, or, in the alternative, that First Merit has demonstrated its intent to take effective action to avoid recurrence of such activity.

6. That failure to comply with the deadlines set forth in this order may subject First Merit to further sanctions.

7. The Court reserves the right to schedule further hearings on this matter and require First Merit personnel to attend such hearings if the analysis, required by decretal paragraph 3, is inadequate in the Court's judgment.